68 U.S. 243 (1863)
1 Wall. 243
EX PARTE VALLANDIGHAM.
Supreme Court of United States.

*248 Mr. Justice WAYNE, after stating the case, much as precedes, delivered the opinion of the court:
General Burnside acted in the matter as the general commanding the Ohio Department, in conformity with the instructions for the government of the armies of the United States, approved by the President of the United States, and published by the Assistant Adjutant-General, by order of the Secretary of War, on the 24th of April, 1863.[*]
*249 It is affirmed in these instructions,[*] that military jurisdiction is of two kinds. First, that which is conferred and defined by statute; second, that which is derived from the common law of war. "Military offences, under the statute, must be tried in the manner therein directed; but military offences, which do not come within the statute, must be tried and punished under the common law of war. The character of the courts which exercise these jurisdictions depends upon the local law of each particular county."
In the armies of the United States, the first is exercised by courts-martial, while cases which do not come within the "rules and regulations of war," or the jurisdiction conferred by statute or court-martial, are tried by military commissions.
These jurisdictions are applicable, not only to war with foreign nations, but to a rebellion, when a part of a country wages war against its legitimate government, seeking to throw off all allegiance to it, to set up a government of its own.
Our first remark upon the motion for a certiorari is, that there is no analogy between the power given by the Constitution and law of the United States to the Supreme Court, and the other inferior courts of the United States, and to the judges of them, to issue such processes, and the prerogative power by which it is done in England. The purposes for which the writ is issued are alike, but there is no similitude in the origin of the power to do it. In England, the Court of King's Bench has a superintendence over all courts of an inferior criminal jurisdiction, and may, by the plenitude of its power, award a certiorari to have any indictment removed and brought before it; and where such certiorari is allowable, it is awarded at the instance of the king, because every indictment is at the suit of the king, and he has a prerogative of suing in whatever court he pleases. The courts of the United States derive authority to issue such a writ from the Constitution and the legislation of Congress. To place the two sources of the right to issue the writ in obvious contrast, and in application to the motion we are considering *250 for its exercise by this court, we will cite so much of the third article of the Constitution as we think will best illustrate the subject.
"The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may, from time to time, ordain and establish." "The judicial power shall extend to all cases in law and equity, arising under the Constitution, the laws of the United States, and treaties made or which shall be made under their authority; to all cases affecting ambassadors, other public ministers and consuls," &c., &c., and "in all cases affecting ambassadors, other ministers and consuls, and those in which a State shall be a party, the Supreme Court shall have original jurisdiction. In all the other cases before mentioned, the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions and under such regulations as the Congress shall make." Then Congress passed the act to establish the judicial courts of the United States,[*] and in the 13th section of it declared that the Supreme Court shall have exclusively all such jurisdiction of suits or proceedings against ambassadors or other public ministers or their domestics or their domestic servants as a court of law can have or exercise consistently with the laws of nations, and original, but not exclusive jurisdiction, of suits brought by ambassadors, or other public ministers, or in which a consul or vice-consul shall be a party. In the same section, the Supreme Court is declared to have appellate jurisdiction in cases hereinafter expressly provided. In this section, it will be perceived that the jurisdiction given, besides that which is mentioned in the preceding part of the section, is an exclusive jurisdiction of suits or proceedings against ambassadors or other public ministers or their domestics or domestic servants, as a court of law can have or exercise consistently with the laws of nations, and original but not exclusive jurisdiction of all suits brought by ambassadors or other public ministers, or in which a consul or vice-consul shall be a party, thus guarding them *251 from all other judicial interference, and giving to them the right to prosecute for their own benefit in the courts of the United States. Thus substantially reaffirming the constitutional declaration, that the Supreme Court had original jurisdiction in all cases affecting ambassadors and other public ministers and consuls, and those in which a State shall be a party, and that it shall have appellate jurisdiction in all other cases before mentioned, both as to law and fact, with such exceptions and under such regulations as the Congress shall make.
The appellate powers of the Supreme Court, as granted by the Constitution, are limited and regulated by the acts of Congress, and must be exercised subject to the exceptions and regulations made by Congress.[*] In other words, the petition before us we think not to be within the letter or spirit of the grants of appellate jurisdiction to the Supreme Court. It is not in law or equity within the meaning of those terms as used in the 3d article of the Constitution. Nor is a military commission a court within the meaning of the 14th section of the Judiciary Act of 1789. That act is denominated to be one to establish the judicial courts of the United States, and the 14th section declares that all the "before-mentioned courts" of the United States shall have power to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, agreeably to the principles and usages of law. The words in the section, "the before-mentioned" courts, can only have reference to such courts as were established in the preceding part of the act, and excludes the idea that a court of military commission can be one of them.
Whatever may be the force of Vallandigham's protest, that he was not triable by a court of military commission, it is certain that his petition cannot be brought within the 14th section of the act; and further, that the court cannot, without *252 disregarding its frequent decisions and interpretation of the Constitution in respect to its judicial power, originate a writ of certiorari to review or pronounce any opinion upon the proceedings of a military commission. It was natural, before the sections of the 3d article of the Constitution had been fully considered in connection with the legislation of Congress, giving to the courts of the United States power to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute, which might be necessary for the exercise of their respective jurisdiction, that by some members of the profession it should have been thought, and some of the early judges of the Supreme Court also, that the 14th section of the act of 24th September, 1789, gave to this court a right to originate processes of habeas corpus ad subjiciendum, writs of certiorari to review the proceedings of the inferior courts as a matter of original jurisdiction, without being in any way restricted by the constitutional limitation, that in all cases affecting ambassadors, other public ministers and consuls, and those in which a State shall be a party, the Supreme Court shall have original jurisdiction. This limitation has always been considered restrictive of any other original jurisdiction. The rule of construction of the Constitution being, that affirmative words in the Constitution, declaring in what cases the Supreme Court shall have original jurisdiction, must be construed negatively as to all other cases.[*] The nature and extent of the court's appellate jurisdiction and its want of it to issue writs of habeas corpus ad subjiciendum have been fully discussed by this court at different times. We do not think it necessary, however, to examine or cite many of them at this time. We will annex a list to this opinion, distinguishing what this court's action has been in cases brought to it by appeal from such applications as have been rejected, when it has been asked that it would act upon the matter as one of original jurisdiction.
*253 In the case Ex parte Milburn,[*] Chief Justice Marshall said, as the jurisdiction of the court is appellate, it must first be shown that it has the power to award a habeas corpus. In re Kaine,[] the court denied the motion, saying that the court's jurisdiction to award the writ was appellative, and that the case had not been so presented to it, and for the same cause refused to issue a writ of certiorari, which in the course of the argument was prayed for. In Ex parte Metzger,[] it was determined that a writ of certiorari could not be allowed to examine a commitment by a district judge, under the treaty between the United States and France, for the reason that the judge exercised a special authority, and that no provision had been made for the revision of his judgment. So does a court of military commission exercise a special authority. In the case before us, it was urged that the decision in Metzger's case had been made upon the ground that the proceeding of the district judge was not judicial in its character, but that the proceedings of the military commission were so; and further, it was said that the ruling in that case had been overruled by a majority of the judges in Raines' case. There is a misapprehension of the report of the latter case, and as to the judicial character of the proceedings of the military commission, we cite what was said by this court in the case of The United States v. Ferreira.[§]
"The powers conferred by Congress upon the district judge and the secretary are judicial in their nature, for judgment and discretion must be exercised by both of them, but it is not judicial in either case, in the sense in which judicial power is granted to the courts of the United States." Nor can it be said that the authority to be exercised by a military commission is judicial in that sense. It involves discretion to examine, to decide and sentence, but there is no original jurisdiction in the Supreme Court to issue a writ of habeas corpus ad subjiciendum to review or reverse its proceedings, or the writ of certiorari to revise the proceedings of a military commission.
*254 And as to the President's action in such matters, and those acting in them under his authority, we refer to the opinions expressed by this court, in the cases of Martin v. Mott,[*] and Dynes v. Hoover.[]
For the reasons given, our judgment is, that the writ of certiorari prayed for to revise and review the proceedings of the military commission, by which Clement L. Vallandigham was tried, sentenced, and imprisoned, must be denied, and so do we order accordingly.
CERTIORARI REFUSED.
NELSON, J., GRIER, J., and FIELD, J., concurred in the result of this opinion. MILLER, J., was not present at the argument, and took no part.
NOTES
[*] They were prepared by Francis Leiber, LL.D., and were revised by a board of officers, of which Major-General E.A. Hitchcock was president
[*] § 1, ¶ 13.
[*] 1 Stat. at Large, 73, chap. 20.
[*] Durousseau v. The United States, 6 Cranch, 314; Barry v. Mercein, 5 Howard, 119; United States v. Curry, 6 Id., 113; Forsyth v. United States, 9 Id., 571.
[*] Marbury v. Madison, 1 Cranch, 137; State of New Jersey v. State of New York, 5 Peters, 284; Kendall v. The United States, 12 Id., 637; Cohens v. Virginia, 6 Wheaton, 264.
[*] 9 Peters, 704.
[] 14 Howard, 103.
[] 5 Id., 176.
[§] 13 Id., 48
[*] 12 Wheaton, pp. 28 to 35, inclusive.
[] 20 Howard, 65.