## DE WAR v. HUNTER.

No. 3700.

United States Court of Appeals
Tenth Circuit.

Nov. 3, 1948.

Rehearing Denied Dec. 6, 1948.

Howard F. McCue, of Topeka, Kan. (Roy N. McCue, of Topeka, Kan., on the brief), for appellant.

Nicholas R. Voorhis, of Washington, D. C. (Randolph Carpenter, U. S. Atty. and Eugene W. Davis, Asst. U. S. Atty., both of Topeka, Kan., and Thayer Chapman, Major, JAGD, of Washington, D. C.), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, Ernest DeWar, has appealed from an order of the District Court of the United States for the District of Kansas, discharging a writ of habeas corpus, dismissing his petition for the same and remanding him to the custody of the respondent, Walter A. Hunter, Warden of the Federal Penitentiary at Leavenworth, Kansas.

Appellant was a member of the 5th Signal Company serving with the 5th Infantry Division in Combat in Germany on April 22, 1945. He was tried by a general court-martial of the 5th Infantry Division on charges charging rape of Elisabeth Mathes, assault upon her with intent to do her bodily harm, and with fraternizing with German civilians, all contrary to the applicable provisions of the Articles of War. Appellant was found guilty and was sentenced to death. All legal steps for review and re-examination of the trial proceedings and the sentence were duly and regularly taken and as a result his sentence was reduced to imprisonment of thirty years.

The assignments of error urged for reversal are:

1. That the court-martial was wholly without jurisdiction to try appellant for the reason that there was no substantial compliance with the mandatory provisions of Article of War 70, 10 U.S.C.A. § 1542;[1] and 2, that the court-martial was without authority because of the Act of Congress providing for courts-martial is void because it does not provide for service of private soldiers as members of such courts in cases where privates are on trial.

The facts in this case are simple and not materially in dispute. On March 21, 1945, Hermann and Elisabeth Mathes, husband and wife, were living in Wendelsheim, Germany. The alleged rape was committed that night between 11 and 11:30 in their home in the presence of the husband. Complaint was made to the Divisional Military Police on the morning of March 22, and as a result appellant was placed under

---

[1] Article of War 70, reads as follows:

"Charges; action upon (article 70). Charges and specifications must be signed by a person subject to military law, and under oath either that he has personal knowledge of, or has investigated, the matters set forth therein, and that the same are true in fact, to the best of his knowledge and belief.

"No charge will be referred to a general court martial for trial until after a thorough and impartial investigation thereof shall have been made. This investigation will include inquiries as to the truth of the matter set forth in said charges, form of charges, and what disposition of the case should be made in the interest of justice and discipline. At such investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available and to present anything he may desire in his own behalf either in defense or mitigation, and the investigating officer shall examine available witnesses requested by the accused. If the charges are forwarded after such investigation, they shall be accompanied by a statement of the substance of the testimony taken on both sides.

"Before directing the trial of any charge by general court-martial the appointing authority will refer it to his staff judge advocate for consideration and advice.

"When any person subject to military law is placed in arrest or confinement immediate steps will be taken to try the person accused or to dismiss the charge and release him. Any officer who is responsible for unnecessary delay in investigating or carrying the case to a final conclusion shall be punished as a court-martial may direct. When a person is held for trial by general court-martial the commanding officer will, within eight days after the accused is arrested or confined, if practicable, forward the charges to the officer exercising general court-martial jurisdiction and furnish the accused a copy of such charges. If the same be not practicable, he will report to superior authority the reasons for delay. The trial judge advocate will cause to be served upon the accused a copy of the charges upon which trial is to be had, and a failure so to serve such charges will be ground for a continuance unless the trial be had on the charges furnished the accused as hereinbefore provided. In time of peace no person shall, against his objection, be brought to trial before a general court-martial within a period of five days subsequent to the service of charges upon him."

arrest. Lieutenant Albert E. Prendergast was appointed investigating officer. He took a statement from the complaining witness and her husband and then interviewed appellant. There is some conflict between his testimony and that of appellant as to what occurred at this interview. Appellant testified that he requested an opportunity to cross-examine the complaining witness, while Prendergast testified that no such request was made. The trial court resolved this conflict in appellant's favor and found that he expressed a desire to be permitted to cross-examine the complaining witness, Mrs. Mathes, and her husband. The trial court found that, "At the pre-trial investigation before Lt. Prendergast which took place approximately 100 miles from where the offense is alleged to have occurred, the chief complaining witness, Mrs. Mathes and her husband, were not present and were not available."

The trial court found that Prendergast did show appellant the statements of the two complaining witnesses; that he read him Article of War 70, but did not otherwise inform him of his constitutional rights. The trial court also found that Prendergast in substance asked appellant whether there was any thing he wanted to do to help himself and the appellant replied, "Yes, go see the sergeant; go see my first sergeant and somebody around the Company", and that Prendergast asked appellant whether there were any other witnesses that he desired to have interviewed in his behalf, and that at the conclusion of his interview with appellant, Prendergast returned to appellant's platoon or division, or battalion headquarters for the purpose of interviewing any witnesses who might be favorable to appellant; that he talked with several witnesses but did not take statements from some of them because he thought that they were not important one way or the other to his case; that he did, at appellant's request, interview and take a statement from Sgt. Kurgan which was favorable to appellant.

The trial court then concluded as follows: "So I have simply tried to recite somewhat evidentiary what Lt. Prendergast testified to, and then I have concluded that other than this—other than what has been recited as to what Lt. Prendergast did do; that he had not complied with these sections, or sentences in the section, that I have read."

The sections of Article of War 70 to which the court referred are these: "No charge will be referred to a general court-martial for trial until after a thorough and impartial investigation thereof shall have been made. This investigation will include inquiries as to the truth of the matter set forth in said charges, form of charges, and what disposition of the case should be made in the interest of justice and discipline. At such investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available * * *."

The trial court then found "that there was no such full opportunity given to the accused to cross-examine witnesses against him at the investigation held before Lt. Prendergast who testified in this case as a witness."

Apparently the trial court's conclusion that Prendergast had not complied with these sections was based on its finding that he had not afforded appellant an opportunity to cross-examine the complaining witnesses whose statements had been shown to him as a part of the preliminary examination.

Appellant's position is that the right to cross-examine complaining witnesses as a part of the preliminary investigation is jurisdictional and that a denial thereof deprives the court of jurisdiction to proceed. The Government, on the other hand, takes the position that compliance with the investigative provisions of Article 70 is administrative and for the guidance of the military, and that failure to comply therewith does not affect the jurisdiction of the court. The trial court expressed some doubt as to the correct answer but felt that it was a question that should be decided by the appellate court. Accordingly, it reluctantly resolved the doubt against appellant, denied him any relief, and afforded him an opportunity to appeal in forma pauperis.

A great number of authorities are cited by both parties to sustain their respective

contentions. We do not discuss these cases herein in detail because a careful examination thereof shows that they do not touch the precise question. They have general application only insofar as they deal with courts-martial, their creation, functions and limitations. Such matters are not in dispute in this case.

Respondent states that Waite v. Overlade, 7 Cir., 164 F.2d 722, 724, squarely holds that non-compliance with investigative provisions of Article 70 does not deprive a General Court-Martial of jurisdiction, but a careful reading of that case does not sustain such a broad statement. In the Waite case, a preliminary investigation was held and all the court decided was that: "If there was any relaxation of pretrial investigation requirements not waived by appellant (and we are not convinced that there was), it certainly was not of a nature seriously to impair any of his fundamental constitutional rights."

Neither is Reilly v. Pescor, 8 Cir., 156 F.2d 632, 635, very helpful. There no preliminary investigation in accordance with Article of War 70 was held with reference to the added charge of uttering a forged document. The court merely said: "We therefore may concede without deciding that the Court-Martial was without jurisdiction to try the added charge of uttering a forged document."

Appellant urges upon our consideration the recent case of Smith v. Hiatt, 3 Cir., 1948, 170 F.2d 61, in support of his contention that failure to comply with the provisions of Article 70 deprives the court of jurisdiction. But again, a careful reading of the opinion does not sustain such a broad statement. All the court held in that case was that although the investigation was made in substantial compliance with the provisions of Article 70, the judgment of the court was void because the investigation which was held was so unfair and partial as to amount to a denial of due process.

In our case a fair and impartial preliminary investigation was made. Prendergast took the statements of the two complaining witnesses and submitted them to appellant when he interviewed him. He expressed a spirit of fairness and willingness to help appellant in any way he could. He asked him if there was anything he wanted to do to help himself, and when he replied "go see my first sergeant and somebody around the company", he went. He took the sergeant's statement. He did not take the statements from some of the others because, as he testified, he was of the opinion that they would not be helpful to appellant and the fact that they did not recall seeing him during the time in question would be more harmful than helpful to him. That his conclusion in respect to such testimony was justified, finds some support in the fact that none of the others around the company headquarters were called as witnesses by appellant although he was defended by two practicing lawyers who were afforded ample opportunity to prepare his defense. When asked at the time of trial whether ample opportunity had been afforded the defense for preparation of trial, his attorneys answered in the affirmative.

 If due process was denied appellant in this case, it resulted from the sole fact that he was not, at the time of the preliminary investigation, afforded an opportunity to cross-examine the complaining witness and her husband. But the applicable provision of Article of War 70 does not give to an accused the absolute right, under all circumstances, to such cross-examination. It provides that at such investigation he shall be given the right to cross-examine the witnesses "if they are available". In the administration of this regulation, those in charge of the investigation must of necessity be vested with the exercise of a sound discretion when a request is made for the production of adverse witnesses for cross-examination. Here, the complaining witnesses were 100 miles away from the place where appellant was interviewed at which time he claimed he requested the right to cross-examine them. The trial court found that these witnesses were not available. This finding was not challenged and must therefore stand. We decide only that under the facts in this case as found by the trial court failure, at the time of the preliminary investigation, to grant

appellant's request to cross-examine these two witnesses did not constitute want of due process.

▇▇▇ Appellant's contention that a court-martial constituted to try a private soldier, composed entirely of officers, violates the 6th Amendment of the Constitution, in that it denies him a right to a trial before his peers or equals, is not well founded. The right of trial by jury guaranteed by the 6th Amendment to the Constitution of the United States is not applicable in a trial by military court-martial.[2] Hence, decisions respecting the right to trial by one's peers in civil courts are inapplicable. A soldier is subject to military law and what constitutes due process in a trial by a military tribunal is gauged by the principles of military law enacted by the Congress,[3] provided the accused is given due notice of the charge against him, a fair opportunity to prepare his defense, and his guilt is adjudicated by a competent tribunal.[4]

Here, appellant was tried in substantial compliance with the provisions of military law and was not denied the fundamental requirements of due process enumerated above.

Affirmed.

MURRAH, Circuit Judge (concurring).

In support of his contention that compliance with Article of War 70 is jurisdictional, petitioner relies strongly upon a very recent decision of this court in which we said that " * * * Taking into consideration the plain language and the intended purpose of the Article [70], it is clear that a preliminary investigation in substantial compliance with its requirement is essential to a valid conviction and sentence by a court-martial." Benjamin v. Hunter, 10 Cir., 1948, 169 F.2d 512, 514.

Taken out of its context this language may be susceptible of the meaning sought to be given it by the petitioner, but when considered in its proper relation to the question involved no such construction can be placed upon it. In the Benjamin case the validity of the sentence of the court-martial was challenged "on the single ground that it violates due process" for failure to observe requirements of Article 70. We held that since the preliminary investigation was in substantial compliance with Article 70 the constitutional or fundamental rights of the petitioner were not invaded in a manner to void the sentence. Cf. Waite v. Overlade, 7 Cir., 164 F.2d 722, certiorari denied 334 U.S. 812, 68 S.Ct. 1017.

None of the cases cited, or which I have been able to find, hold or infer that failure to comply with Article 70 ousts the court-martial of jurisdiction to try one charged with an offense under Military Law. On the contrary, all the decisions and the plain reasoning lead to the conclusion that Article 70, like other procedural requirements, is a safeguard for due process of law—a pattern for a full and fair hearing. This view is consistent with the purpose of Military Law to insure due process for the trial of those charged with its infractions. It is consistent with the construction placed upon arraignments under civil law. Cf. Garland v. Washington, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772.

Lest failure to cite and explain the Benjamin case might offer some encouragement to those who would rely upon the isolated statement, and in the interest of precedent, I deem it appropriate to append this comment to the opinion of the court.

[2] Ex parte Quirin, 317 U.S. 1, 38, 39, 45, 63 S.Ct. 2, 87 L.Ed. 3.

[3] Reaves v. Ainsworth, 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225; French v. Weeks, 259 U.S. 326, 42 S.Ct. 505, 66 L.Ed. 965.

[4] Herlihy v. Donohue, 52 Mont. 601, 161 P. 164, 166, L.R.A.1917B, 702, Ann. Cas.1917C, 29.